**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| FRANK CLANCY, | ) | |
| | ) | |
| *Plaintiff*, | ) | |
| | ) | No. 26 C 6973 |
| v. | ) | Chief Judge Virginia M. Kendall |
| | ) | |
| PHILIP MORRIS USA INC., R.J. REYNOLDS TOBACCO COMPANY, LIGGETT GROUP LLC, and WALGREEN, CO., | ) | |
| *Defendants*. | ) | |

**OPINION & ORDER**

Plaintiff Frank Clancy filed a nine-count Complaint in the Circuit Court of Cook County, Illinois, against Defendants R.J. Philip Morris USA INC., Reynolds Tobacco Company, Liggett Group LLC, and Walgreen Co. (Dkt. 1-1). Philip Morris, Reynolds, and Ligget (collectively, the "Manufacturer Defendants") removed the case to the United States District Court for the Northern District of Illinois. (Dkt. 1). Clancy filed Motion to Remand and a Motion for Award of Costs and Fees under 28 U.S.C. § 1447(c). (Dkt. 20). The Court grants Clancy's Motion to Remand[1] and denies his Motion for Award of Costs and Fees [20].

**BACKGROUND**

Clancy, a Chicago resident, began smoking cigarettes at the age of twelve and developed a nicotine addiction. (Dkt. 1-1 ¶ 3). At one point, Clancy smoked up to two packs of cigarettes a day. (*Id.*) The cigarettes Clancy smoked came from the Defendants, who manufactured, designed, sold, and advertised them. (*Id.* ¶¶ 2-4). While Clancy attempted to stop smoking cigarettes throughout the years — he tried hypnosis, acupuncture, nicotine patches, and gum — all efforts to quit

[1] Granting Clancy's Motion to Remand [20] moots the Manufacturer Defendants' Motions to Dismiss [15, 18].

remained unsuccessful. (*Id.* ¶ 4). Clancy ultimately developed chronic obstructive pulmonary disease ("COPD") from smoking cigarettes. (*Id.* ¶ 9).

Clancy purchased cigarettes from Walgreen, an Illinois citizen. (*Id.* ¶ 8). Walgreen first became involved with the tobacco industry when it started advertising for it in the 1960s. (*Id.* ¶ 22). In 1977, Walgreen started pursuing partnerships with the tobacco industry when it offered to leverage its image as a "health center" to help develop public support for cigarette manufactures. (*Id.* ¶ 23). Walgreen admitted that it did not "want to step into the middle of a raging controversy, but as an established health center there [were] many, many things" it could do to muster support among the public. (*Id.* ¶ 166). Walgreen's proactivity allowed it to successfully contract with tobacco companies. (*Id.* ¶ 24).

According to Clancy, in the 1990s, Walgreen should have known about the dangers of tobacco products. (*Id.* ¶ 168). For example, in 1993, Walgreen sought indemnification from major cigarette companies for potential future lawsuits. (*Id.*) Walgreen, however, continued to maintain relationships with the industry. (*Id.* ¶¶ 25-26). Walgreen worked with the Tobacco Institution to reduce cigarette taxes and teamed up with the tobacco industry to fight the Food and Drug Administration's efforts to regulate cigarettes. (*Id.* ¶ 28). Walgreen continued working with the tobacco industry throughout the 1990s and into the 2000s. (*Id.* ¶¶ 29-33).

Walgreen's website indicates its knowledge of the harm caused by smoking cigarettes. (*Id.* ¶ 159). The website had a detailed list of the dangerous components of cigarette smoke, recognizing that it contains 7,000 chemicals, 70 of which cause cancer. (*Id.*) Regular consumers, according to Clancy, would not know about these unsafe chemicals. (*Id.*) Walgreen's website also includes a list of unknown diseases caused by smoking cigarettes. (*Id.* ¶ 162).

Because Walgreen sold cigarettes to Clancy when the company allegedly knew of the dangers and defects of cigarettes, Clancy smoked for longer than he would have, causing him to develop bodily injuries such as COPD. (*Id.* ¶¶ 177-78). Clancy filed this lawsuit in state court, in part, against Walgreen for negligence (Count VIII) and strict liability (Count IX). The Manufacturer Defendants subsequently removed this case to the Northern District of Illinois, alleging that Clancy, an Illinois resident, fraudulent joined Walgreen, also an Illinois resident, to destroy diversity jurisdiction. (Dkt. 1). Clancy now moves to remand the case back to state court. (Dkt. 20).

**LEGAL STANDARD**

"'Federal courts are courts of limited subject matter jurisdiction, meaning we have authority to hear cases only where authorized by statute and permitted by the Constitution.'" *Chapman v. Burke*, 186 F.4th 885, 893 (7th Cir. 2026) (quoting *Satanic Temple, Inc. v. Rokita*, 163 F.4th 1061, 1066 (7th Cir. 2026)). Federal courts have jurisdiction over diversity of citizenship cases that arise under 28 U.S.C. § 1332. Section 1332 "establishes federal jurisdiction over 'all civil actions where the matter in controversy exceeds' $75,000 and, as relevant here, [when] the action is between 'citizens of different States[.]'" *Page v. Democratic Nat'l Comm.*, 2 F.4th 630, 634 (7th Cir. 2021) (quoting 28 U.S.C. § 1332(a)). Complete diversity of citizenship must exist for jurisdiction to arise under § 1332. *Craig v. City of Richmond, Indiana*, 179 F.4th 535, 539 (7th Cir. 2026).

If a plaintiff files a civil action in state court, a defendant can remove the case from state court to federal court provided that federal jurisdiction exists. 28 U.S.C. § 1441. Under § 1441, a defendant can remove "any civil action brought in a state court of which the district courts of the United States have original jurisdiction . . . to the district court of the United States for the district

and division embracing the place where such action is pending." 28 U.S.C. § 1441. The party seeking removal "bears the burden of establishing federal jurisdiction." *Tri-State Water Treatment, Inc. v. Bauer*, 845 F.3d 350, 352 (7th Cir. 2017). Once a case has been removed from state court to federal court, 28 U.S.C. § 1447 governs the procedures following removal. Section 1447(c) requires a district court to remand a case back to state court "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction[.]" *See Thompson v. Army & Air Force Exch. Serv.*, 125 F.4th 831, 835 (7th Cir. 2025) (in the context of 1447(c), "'[s]hall' connotes a requirement.").

Courts "should interpret the removal statute narrowly and presume that the plaintiff may choose his or her forum." *Doe v. Allied-Signal, Inc.*, 985 F.2d 908, 911 (7th Cir. 1993). While a plaintiff can choose his own forum, he cannot "join a nondiverse defendant simply to destroy diversity jurisdiction." *Schur v. L.A. Weight Loss Centers, Inc.*, 577 F.3d 752, 763 (7th Cir. 2009). Under the fraudulent joinder doctrine, a district court considering removal can "'disregard, for jurisdictional purposes, the citizenship of certain nondiverse defendants, assume jurisdiction over a case, dismiss the nondiverse defendants, and thereby retain jurisdiction.'" *Id.* (quoting *Mayes v. Rapoport*, 198 F.3d 457, 462 (4th Cir. 1999)). The district court must ask "whether there is 'any reasonable possibility' that the plaintiff could prevail against the non-diverse defendant." *Id.* at 764 (quoting *Poulos v. Naas Foods, Inc.*, 959 F.2d 69, 73 (7th Cir. 1992)). The defendant, therefore, faces a "heavy burden" in demonstrating the joinder is fraudulent. *Id.*

## DISCUSSION

The Manufacturer Defendants removed the case from state court to federal court on the theory that Clancy fraudulently joined Walgreen. (Dkt. 1 at 3). Clancy filed a negligence and strict liability claim against Walgreen in state court. (Count VIII). (Dkt. 1-1 ¶¶ 149-179). At least eleven

other courts in this district have addressed the issue of fraudulent joinder in cigarette sale cases against Walgreen. Ten of the eleven courts, including this one, have declined to find that the plaintiff had no reasonable chance of succeeding on his negligence or strict liability claim against Walgreen, and thus, remanded the case back to state court. *See e.g., Sturdivant v. Phillip Morris USA Inc., R.J. Reynolds Tobacco Company, Liggett Group LLC, & Walgreen Co.*, No. 26 C 7469, Doc. 31 (N.D. Ill. Oct. 19, 2026); *Vincent Mungnolo v. Philip Morris USA Inc., et al.*, 2026 WL 3060268 (N.D. Ill. Oct. 13, 2026)*; Deborah M. Sarno & John P. Sarno, Plaintiffs, v. Philip Morris USA Inc., R.J. Reynolds Tobacco Company, Liggett Group LLC, & Walgreen Co.*, 2026 WL 2241663 (N.D. Ill. Aug. 3, 2026); *Jordan v. R.J. Reynolds Tobacco Co.*, No. 21 C 941, Doc. 40 (N.D. Ill. Apr. 26, 2021); *Jones v. Philip Morris USA, Inc.*, 2021 WL 12179449 (N.D. Ill. Feb. 16, 2021); *Dispenza v. Philip Morris USA Inc.*, No. 20 C 5190, Doc. 37 (N.D. Ill. Dec. 2, 2020); *Stone v. Philip Morris USA Inc.*, No. 20 C 5198, Doc. 38 (N.D. Ill. Oct. 26, 2020); *Andersen v. Philip Morris USA Inc.*, 2020 WL 433867 (N.D. Ill. Jan. 28, 2020); *Smith v. Philip Morris USA Inc.*, 2019 WL 4750119 (N.D. Ill. Sep. 30, 2019); *Mitchell v. Philip Morris USA Inc.*, 2019 WL 1787587 (N.D. Ill. Apr. 24, 2019).

The Manufacturer Defendants contend that Clancy's case does not align with the above opinions but, rather, bears similarity with the line of reasoning in two other district court cases. *See Clay v. Philip Morris USA Inc.*, 2018 WL 11198356, at *3 (N.D. Ill. Nov. 6, 2018) (plaintiff has no reasonable possibility of succeeding on his negligence or strict liability claim against defendant because he only includes conclusory allegations); *see also Int'l Bhd. of Teamsters Loc. 734 Health & Welfare Tr. Fund v. Philip Morris, Inc.*, 1998 WL 242130, at *4 (N.D. Ill. May 8, 1998) ("bald assertions" cannot establish the plaintiff has a reasonable possibility of success). Clancy's Complaint differs from these opinions, however, as he includes specific allegations to

support his negligence claim against Walgreen, indicating that he has a reasonable possibility of success.

Clancy also requested attorneys' fees and costs asserting the Manufacturer Defendants had no reasonable basis to remove the case. (Dkt. 20 at 11). While Clancy established that he has a reasonable chance of success on his negligence claim,[2] requiring remand to state court, the Court will not award Clancy attorneys' fees.

## I. Negligence Claim

To establish negligence under Illinois law, a plaintiff must show that the defendant owed him "a duty of care, that it breached that duty, and that the breach proximately caused his injuries." *Khouri v. Highland Park CVS, LLC*, 178 F.4th 391, 397-98 (7th Cir. 2026). The Manufacturer Defendants argue that Clancy has no possible chance of prevailing on his negligence claim against Walgreen for three reasons. (Dkt. 28).

First, the Manufacturer Defendants argue that Clancy does not demonstrate that Walgreen had superior knowledge. (Dkt. 28 at 5). For superior knowledge, Clancy alleges that Walgreen, through its "close relationship" with the tobacco industry, knew about the dangers and defects of smoking cigarettes. (Dkt. 1-1 at 54). For example, Reynolds told Walgreen, in 2008, that tobacco products all have risks and reducing cigarette use would benefit the public. (*Id.* at 55). Furthermore, Walgreen disclosed on its websites specific unknown chemicals in cigarettes and ailments caused by smoking them knowledge allegedly unknown by the ordinary consumer. (*Id.* at 51-52). These assertions, viewed collectively, indicate that Walgreen has a reasonable probability in establishing Walgreen had superior knowledge. *See e.g. Schur v. L.A. Weight Loss Centers, Inc.*, 577 F.3d 752,

[2] The Court does not address whether Clancy has a reasonable possibility of success on his strict liability claim against Walgreen because he has a reasonable chance of success with his negligence claim. This alone, destroys diversity jurisdiction, requiring remand.

764 (7th Cir. 2009) ("some courts, including district courts within this circuit, have suggested that the burden is even more favorable to the plaintiff than the standard that applies to a motion to dismiss under.").

Second, the Manufacturer Defendants assert that Clancy did not allege proximation causation between Walgreen's actions and his injuries. (Dkt. 28 at 5). Clancy states that he bought cigarettes from Walgreens and smoked them, feeding his addition. (Dkt. 1-1 at 56-57). Had Walgreens not sold Clancy these cigarettes, Clancy believes he would have smoked less or quit smoking earlier. (*Id.*) These pleadings indicate that Clancy has a reasonable possibility of establishing causation based on the facts plead in his Complaint. *See Mitchell*, 2019 WL 1787587 at *4 ("conclusory pleading, while fatal on a Rule 12(b)(6) motion, does not necessarily result in a finding of fraudulent joinder.").

Third, the Manufacturer Defendants argue that federal law — the Federal Cigarette Labeling and Advertising Act ("FLCAA") — preempts Clancy's negligence claim. The FLCAA, according to the Manufacturer Defendants, expressly preempts failure-to-warn claims and impliedly preempts mere selling cigarette claims. (Dkt. 28 at 10-11). Under the FLCAA, "[n]o requirement or prohibition based on smoking and health shall be imposed under State law with respect to the advertising or promotion of any cigarettes the packages of which are labeled in conformity with the provisions of this chapter." 15 U.S.C. § 1334(b). Whether the FLCAA preempts failure-to-warn claims for retailers does not matter for Clancy's ability to succeed on a negligence claim, as it does not preempt general negligence claims, which Clancy plausibly asserts in his Complaint. *See Vincent Mungolo*, 2026 WL 3060268, at *3 ("The FCLAA does not preclude other negligence theories, like general negligence."); *Mitchell*, 2019 WL 1787587, at *4 (even if

the FLCAA preempts state failure-to-warn claims, it does "not necessarily preclude any other negligence theories under which Plaintiff might attempt to proceed.").

The Manufacturer Defendants face a "heavy burden" in establishing fraudulent joinder, and they have failed to satisfy their burden. *Schur*, 577 F.3d at 764. Walgreen, thus, remains a proper defendant in this lawsuit, destroying complete diversity. As a result, the Court does not have jurisdiction to hear this case and remands it back to state court.

**II. Attorney's Fees**

Clancy also requests attorneys' fees under § 1447(c) for the costs incurred because of the Manufacturer Defendants' removal of the case to federal court. (Dkt. 20). "An order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." 28 U.S.C. § 1447. The Court can only award fees and costs under § 1447(c) when "the removing party lacked an objectively reasonable basis for seeking removal." *Martin v. Franklin Cap. Corp.*, 546 U.S. 132, 141 (2005); *Mins. Dev. & Supply Co. v. Hunton & Williams LLP*, 488 F. App'x 153, 154 (7th Cir. 2012) (Title 18 U.S.C. allows for an award of attorneys' fees "when a removal is unreasonable").

The Manufacturer Defendants lack an objectively reasonable basis for removal if clearly established law indicates that they had no basis to remove its case. *Lott v. Pfizer, Inc.*, 492 F.3d 789, 793 (7th Cir. 2007). Clearly established law does not exist here as only district courts have ruled on the specific issue before the Court. *Wisconsin v. Amgen, Inc.*, 516 F.3d 530, 534 (7th Cir. 2008) ("paucity of appellate authority gave [defendant] a reasonable basis for removing"); *Lott*, 492 F.3d at 793 ("District court decisions, let alone conflicting district court decisions, do not render the law clearly established."); *Bank of Am., N.A. v. Moglia*, 330 F.3d 942, 949 (7th Cir.

2003) ("district court decisions cannot be treated as authoritative on issues of law."). The Court denies Clancy's request for attorneys' fees under § 1447(c).

## **CONCLUSION**

For the reasons stated, the Court grants the Plaintiff's motion for remand [20]. The Court, accordingly, denies the Manufacturer Defendants pending motions to dismiss [15, 18] as moot. The Court directs the Clerk to remand this case to the Cook County Circuit Court forthwith.

Virginia M. Kendall
United States District Judge

Date: November 10, 2026